## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before the Honorable Jennifer Choe-Groves**

| | |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD | |
| Plaintiff, | Court No. 23-00011 |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| BRIGGS & STRATTON, LLC, | |
| Defendant-Intervenor. | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

On behalf of the Plaintiff Zhejiang Amerisun Technology Co., Ltd. ("Zhejiang Amerisun"), a foreign exporter of lawnmowers from the People's Republic of China which employ the R210-S horizontal shaft engine, we respectfully submit the following memorandum in support of the Plaintiff's 56.2 motion for judgment on the agency record in this action.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

I.     STATEMENTS PURSUANT TO RULE 56.2(c)(2)........................................................ 1

    A.     The Administrative Decision Sought to be Reviewed ........................................ 1

    B.     Statement of the Issues................................................................................... 1

    C.     Standard of Review........................................................................................ 2

    D.     Statement of the Case..................................................................................... 2

II.     ARGUMENT ....................................................................................................... 3

    A.     Factual Background ....................................................................................... 3

    B.     Commerce's Determination that Chongqing Rato's Modified R210-S Engine is a Modified Vertical Shaft Engine Within the Scope of the Orders is Contrary to the Plain Language of the Scope ....................................................... 4

    C.     The End Use of the Engine is Not Determinative in Commerce's Interpretation of the Scope of the *Orders* ............................................................ 9

III.     CONCLUSION.................................................................................................... 11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*CS Wind Vietnam Co., Ltd. v. United States*,
  832 F.3d 1367 (Fed. Cir. 2016)............................................................6, 7

*Diamond Sawblades Manufacturers' Coalition v. United States*,
  405 F.Supp.3d 1345 (Ct. Int'l Trade 2019) ................................9, 10

*King Supply Co., LLC v. United States*,
  674 F.3d 1343 (Fed. Cir. 2012)..........................................................5, 9, 10

*Ticaret A.S. v. United States*,
  222 F.Supp.3d 1255 (Ct. Int'l Trade 2017) ...........................................7

### Statutes

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................1

28 U.S.C. § 1581(c) ...........................................................................1

### Other Authorities

19 C.F.R. § 351.225(k)(1)................................................................4, 10

19 C.F.R § 351.225(k)(2)..................................................................7

Fed. R. Civ. P. 56.2(c)(2).................................................................1

### Administrative Decisions

*Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts
  Thereof from the People's Republic of China: Antidumping and
  Countervailing Duty Orders*, 86 Fed. Reg. 23675 (Dep't Commerce May 4,
  2021) ............................................................................... *passim*

*Notice of Scope Rulings,* 88 Fed. Reg. 7402 (Feb. 3, 2023) ................................. *passim*

USITC Report, Inv. Nos. 701-TA-643 and 731-TA-1493, Pub. 5185 (April 2021) .......5, 7, 10, 11

## I.     STATEMENTS PURSUANT TO RULE 56.2(C)(2)

### A.     The Administrative Decision Sought to be Reviewed

Zhejiang Amerisun contests the final scope ruling by the International Trade Administration of the United States Department of Commerce ("Commerce") issued on December 22, 2022, concerning the antidumping duty order on certain vertical shaft engines between 99cc and up to 225cc and parts thereof from the People's Republic of China ("PRC") (A-570-124; C-570-125).   *See* Mem.  From Paul Gill, International Trade Compliance Analyst, Office 9, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof, from the People's Republic of China*: *Scope Ruling on Modified Vertical Shaft Engines* (December 22, 2022) ("*Final Scope Ruling"*); Public Record ("P.R.") 25. The Scope Ruling found that so-called "modified vertical shaft engines" fall within the scope of the orders, including the R210-S engine used in Zhejiang Amerisun's walk-behind lawnmowers. *Id*.

Commerce notified all interested parties of the *Final Scope Ruling* by certified mail on January 10, 2023.  The underlying determination was published in the Federal Register on February 3, 2023.  *See Notice of Scope Rulings,* 88 Fed. Reg. 7402 (Feb. 3, 2023).

### B.     Statement of the Issues

Whether Commerce's finding that certain horizontal shaft engines are "modified vertical shaft engines" and thus within the scope of the *Orders* was contrary to the plain language of the scope and thereby unsupported by substantial evidence or otherwise contrary to law.

1

C.      **Standard of Review**

This Court reviews final scope rulings issued by Commerce pursuant to 28 U.S.C. § 1581(c) to determine whether they are "unsupported by substantial evidence on the record or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

D.      **Statement of the Case**

On May 4, 2021, Commerce published the *Antidumping and Countervailing Duty Orders*.[1] On August 8, 2022, the Petitioner filed a scope ruling application requesting that Commerce determine whether so-called "modified vertical shaft engines" are covered by the scope of those *Orders.*  Commerce initiated the scope investigation on August 26, 2022.   *See* Mem. From Paul Gill, International Trade Compliance Analyst, Office 9, to the File, *Initiation Memo: Modified Vertical Shaft Engines*; P.R. 16.  Plaintiff Zhejiang Amerisun participated fully in the scope inquiry by submitting comments and rebuttal factual information on September 26, 2022. *See* Letter from Commerce & Finance Law Offices to the Sec'y of Commerce, *Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts Thereof from China: Comments on Scope Ruling Application Regarding Certain Modified Vertical Shaft Engines* (*"Comments"*) (September 26, 2022); Confidential Record ("C.R.") 12. Petitioner then responded to Amerisun's comments on October 11, 2022. *See* Letter from King & Spalding LLP to the Sec'y of Commerce, *Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts Thereof from China / Petitioner's Response Comments* (October 11, 2022); P.R. 21.  On December 22, 2022, Commerce issued its Final Scope Ruling, was published in the Federal Register on February 3, 2023.  *See Notice of Scope Rulings,*

---

[1] *See Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 23675 (Dep't Commerce May 4, 2021) (*"Orders"*).

88 Fed. Reg. 7402 (Dep't Commerce Feb. 3, 2023).   On January 23, 2023, Zhejiang Amerisun filed a timely summons to initiate this action.

## II.    ARGUMENT

### A.    Factual Background

On May 4, 2021, Commerce published the relevant *Antidumping and Countervailing Duty Orders.  See Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 23675  (Dep't Commerce May 4, 2021) ("*Orders*").   Those *Orders* cover merchandise that consists of spark-ignited, non-road, vertical shaft engines, whether finished or unfinished, whether assembled or unassembled, whether mounted or unmounted, primarily for, but not limited to, walk-behind lawnmowers.  *Id*. at Appendix I.   Further, the *Orders* stated that the subject engines are spark ignition, single-cylinder, air cooled, **internal combustion engines with vertical power take off shafts** with a minimum displacement of 99 cubic centimeters (cc) and a maximum displacement of up to, but not including, 225cc, and which typically generate gross power between 1.95 kilowatts (kw) to 4.75 kw (emphasis added).  *Id*.   Importantly, the *Orders* state that if a subject engine is imported mounted on such equipment as a lawnmower or pressure washer, only the engine is covered by the scope, whether or not the engine is accompanied by other parts.  *Id*.

On August 8, 2022, Briggs & Stratton, LLC ("Petitioner") filed a scope ruling application requesting that Commerce determine whether modified vertical shaft engines are covered by the scope of the *Orders*.  *See* Letter from King & Spalding LLP, to the Sec'y of Commerce, *Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts Thereof from China /* Request *for Scope Ruling Regarding Certain Modified Vertical Shaft Engines* (*Petitioner's Scope Application*) (August 8, 2022); P.R. 1 – P.R. 10.  On August 26, 2022, Commerce initiated the scope inquiry, and requested additional comments from interested parties regarding the factual information

3

contained in the scope ruling application. *See* Mem. From Paul Gill, International Trade Compliance Analyst, Office 9, to the File, *Initiation Memo: Modified Vertical Shaft Engines*; P.R. 16.

Zhejiang Amerisun submitted comments to rebut the claims made in Petitioner's scope ruling request on September 26, 2022. *See* C.R. 12. In its submission, Zhejiang Amerisun argued that its merchandise employs the R210-S engine, which is a horizontal shaft engine, and not a vertical shaft engine, because the crankshaft serves as the engines' power take off shaft in this model and has a horizontal orientation. *Id*. at 4. Thereby, Zhejiang Amerisun contended that the R210-S horizontal shaft engine clearly fell outside of the plain language of the scope under C.F.R. § 351.225(k)(1) since the *Orders* applied specifically to "internal combustion engines with vertical power take off shafts**"** (*i.e.,* vertical shaft engines). *Id*.

On October 11, 2022, Petitioner responded to Zhejiang Amerisun's comments, arguing that the R210-S engine was modified to look and function like a vertical shaft engine. *See* P.R. 21.

On December 22, 2022, Commerce issued its final determination on Petitioner's scope request, concluding that the R210-S engine is a modified vertical shaft engine and that it fell within the scope of the antidumping duty order. *See Final Scope Ruling* at 7; P.R. 25. Commerce found that the portion of the R210-S engine that serves as the power take off shaft has a vertical orientation. *Id.* at 8. Commerce therefore concluded that the R210-S engine is a modified vertical shaft engine by virtue of the "vertical" orientation of its vertical power take off shaft. *Id*.

**B.     Commerce's Determination that Chongqing Rato's Modified R210-S Engine is a Modified Vertical Shaft Engine Within the Scope of the Orders is Contrary to the Plain Language of the Scope**

19 C.F.R. § 351.225(k)(1) requires that the Secretary, in determining whether a product is covered by the scope, consider the language of the scope and may make its determination on that basis alone if the language of the scope, including the descriptions of merchandise expressly

4

excluded from the scope, is dispositive.  Here the language of the scope, including the descriptions of the merchandise excluded from the scope, is dispositive.

The language of the scope of the *Orders* explicitly and exclusively applies to vertical shaft engines.  *See Orders* at Appendix I.  Importantly, the scope states that the subject engines have "vertical power take off shafts." *Id*.  The plain language of the scope shows that the *Orders* cover only engines with vertical power take off shafts, and thereby excludes engines with a power take off shaft comprising any other orientation, such as a horizontal power take off shaft. Indeed, Commerce acknowledges in its scope ruling that the portion of the engine defined as having a vertical orientation as covered by the scope is the power take off shaft.  *Final Scope Ruling* at 8; P.R. 25.  Thus, the principal issue relating to the scope is whether the R210-S engine consists of a horizontal or vertical power take off shaft.

There is no doubt that horizontal shaft engines, which use horizontally oriented power take off shafts, were intended to be outside the scope of the order.  *See King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) (Noting that clear exclusionary language must leave no reasonable doubt that certain products were intended to be outside the scope of the … order). Indeed, the U.S. International Trade Commission ("USITC") Report included with Petitioner's scope application noted that the scope did *not* include engines with a horizontal shaft.  *See Petitioner's Scope Application* at Attachment 15; P.R. 8 (this attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12). Therefore, Commerce's determination that the R210-S horizontal shaft engine used in Zhejiang Amerisun's lawnmowers is a vertical shaft engine directly contradicts the plain language of the scope since the engine's power take off shaft is horizontal rather than vertical.

Commerce concluded that although the R210-S engine consisted of a horizontal crankshaft, the alleged vertical orientation of the so-called "power take off shaft," and not that of the horizontal crankshaft, determined whether the product fell within the scope. *Final Scope Ruling* at 7-8; P.R. 25. This finding is contrary to Zhejiang Amerisun's position that the crankshaft **is** the power take off shaft in the R210-S engine, and therefore the power take off shaft is likewise horizontal. *See Comments* at 3; C.R. 12. In reaching this decision, Commerce, quoting Petitioner's scope application, found that a power take off shaft "is the mechanism through which power is transmitted from the engine to an attached implement, and it can be a secondary drive shaft (*i.e.*, a shaft connected via a gearbox (or transmission) to the crankshaft)." *Final Scope Ruling* at 8; P.R. 25. Notably, Petitioner's support for this claim largely consists of Wikipedia articles generally describing power take off shafts and crankshafts, which are not specific to engines used for lawnmowers. *Petitioner's Scope Application* at Attachment 16a-16c; P.R. 10. Nor do these articles support the proposition that crankshafts and power take off shafts are exclusive to one another, such that a crankshaft could not also be the power take off shaft for the engine, as in the case of the R210-S engine. *Id.*

Critically, it remains unclear how these articles support Petitioner's argument and Commerce's decision that a power take off shaft "can be a secondary drive shaft, *i.e.,* a shaft connected via gearbox (or transmission) to the crankshaft." *Final Scope Ruling* at 8; P.R. 25. Yet, Commerce's decision relies principally on Petitioner's statement, without explaining clearly how the supporting documents establish that the vertical transmission shaft somehow supplants the horizontal crankshaft as the power take off shaft, since it is the object by which power is transmitted from the engine to the lawnmower. *CS Wind Vietnam Co., Ltd. v. United States,* 832 F.3d 1367 (Fed. Cir. 2016) (Commerce has an obligation to supply adequate explanations for its

determinations, and "must reasonably tie its determination to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." *Id.* at 1376); *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 222 F.Supp.3d 1255 (Ct. Int'l Trade 2017) (citing *CS Wind Vietnam*).

Zhejiang Amerisun agrees with Commerce that the power take off shaft is the mechanism through which power is transmitted from the engine to an attached implement.  In the R210-S engine, the power is transmitted from the engine through the horizontal crankshaft. *See Comments* at 3; C.R. 12. However, Commerce's mistake is the inclusion of the secondary drive shaft within the definition of the power take off shaft, relying solely on the language cited by Petitioner discussed above.  Nowhere in the plain language of the scope, however, is there a description of a secondary drive shaft, nor does the language of the scope include a secondary drive shaft within the definition of a power take off shaft.  *Orders* at Appendix I; *see also Petitioner's Scope Application* at Attachment 15; P.R. 8 (this attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12). We further note that Commerce found it "unnecessary to consider the additional factors under 19 C.F.R 351.225(k)(2) in making this scope ruling." *Final Scope Ruling* at 9; P.R. 25.  Therefore, its decision must be based entirely on interpreting the language of the scope of the *Orders*.

The plain language of the scope indicates that the vertical power take off shaft is a part of the engine: "the subject engines are spark ignition, single-cylinder, air cooled, internal combustion engines *with* vertical power take off shafts." *Id.* (italics added for emphasis). The plain language of the scope does not suggest that a power take off shaft can be connected to the engine via a gearbox or any other secondary drive shaft.  *Id.*  Indeed, Zhejiang Amerisun argued that the gearbox is not a part of the engine itself and does not change the essential character of the

7

horizontal shaft engine, but instead is a part of the lawnmower.  *See Comments* at 3; C.R. 12.

Commerce attempted to circumvent this issue by finding that the gearbox and the vertical

transmission shaft connected to it are parts of the engine rather than the lawnmower.  *Final Scope*

*Ruling* at 8; P.R. 25.  But this finding does not withstand scrutiny when considering how the R210-

S engine operates, nor has Commerce fully supported its finding that the gearbox is a part of the

engine or that its inclusion somehow supplants the horizontal crankshaft as the power take off

shaft.

The R210-S engine, used in Zhejiang Amerisun's lawnmowers, has a horizontal crankshaft

which operates as the power take off shaft for the engine.  *See Comments* at 3; C.R. 12.  When the

engine is in use, it moves the horizontal power take off shaft, transmitting power from the engine

to the attached implement, in this case Amerisun's lawnmower. *Id*. The horizontal shaft is the only

shaft directly connected to the engine and able to transmit the generated power. *Id*. This horizontal

shaft then turns a gear within a separate gearbox, that then turns a vertical transmission shaft

connected by a belt to another vertical drive shaft under the mower deck.  *Id*.  Importantly, the

gearbox and other subsequent parts are not a part of the engine but are attached to the lawnmower.

*Id*.  This power transmission system is used exclusively to transmit the power from the horizontal

power take off shaft to turn the mowing blade and does not affect the essential and intrinsic

characteristics of the horizontal shaft engine. *Id*.  All power that originates from the engine is

introduced to the mower through this horizontal shaft.

If the horizontal power take off shaft were removed, power from the engine would not be

transmitted to the gearbox, vertical shafts, or the lawnmower.  *Id*. at 3, Attachment 1.  In this

potential for disconnection, it is clear that the gearbox and its connected vertical shafts are indeed

a part of the lawnmower rather than the engine, since no power would be transmitted to them

without the presence of the horizontal power take off shaft. *See id*. Thus, under the plain language

of the scope, the R210-S engine is not a vertical shaft engine, since there is no vertical shaft directly

transmitting power from the engine. The only shaft connected and able to transmit power directly

from the engine is the horizontal crankshaft, which operates as the power take off shaft for the

engine. *See id.* at 3. The horizontal orientation of this shaft ultimately causes the engine to be a

horizontal shaft engine, which is thereby excluded from the scope of the *Orders*.

### C.   The End Use of the Engine is Not Determinative in Commerce's Interpretation of the Scope of the *Orders*

Commerce was seemingly persuaded by the differing uses of horizontal shaft engines and

vertical shaft engines found in the record. Commerce stated while it found the language of the

scope to be dispositive, it also found "that primary interpretive sources support [its] interpretation

of the scope." *Final Scope Ruling* at 8; P.R. 25. Yet, usage is not dispositive nor should it be

considered a basis for supporting an interpretation of the plain language of the scope. *See King

Supply Co., LLC v. United States*, 674 F.3d. 1343 (Fed. Cir. 2012). The *King Supply* Court noted

in an analysis of Commerce's word choice for scope that the phrase "are used" alone does not

"compel a reading of an exclusive end-use, and it does not render a reading of an exemplary use

unreasonable or outside the scope." *Id*. at 1349. The Court also noted that exclusionary language

must leave "no reasonable doubt that certain products were intended to be outside the scope of the

order. See also *Diamond Sawblades Manufacturers' Coalition v. United States*, 405 F.Supp.3d

1345 (Ct. Int'l Trade 2019) (overturning a finding by Commerce that the product at issue was

outside the scope of the orders. The Court noted that Commerce incorrectly based its

determination on the purpose or use of the merchandise, and that the focus on the product's use is

evident throughout the determination. *Id*. at 1354, 1357. The Court determined that "*only* when

the (k)(1) sources fail to clarify the scope of the order can Commerce consider additional materials;

such as the physical characteristics of the product and its ultimate use... Otherwise, purpose or use cannot be the test when conducting a § 351.225(k)(1) determination." *Id*. at 1357.

Here, Commerce made its determination based in part on the end-use of the product. *See Final Scope Ruling* at 2, 5, 8-9; P.R. 25. But the end-use of the product is not determinative in interpreting the plain language of the scope under 351.225(k)(1). The scope does not state that all walk-behind lawnmowers use vertical shaft engines, nor does evidence on the record suggest that is the case. In *King Supply*, the Court noted that "when Commerce intends to impose end-use restrictions, Commerce consistently uses express terms such as "only" or "solely" to indicate restrictions on end-use for certain products." *King Supply Co., LLC v. United States*, 674 F.3d. 1343, 1347-1348. The Court also indicated that the scope of an order is only stating an example of an end-use for subject merchandise where it employs a qualification such as "for example, e.g., such systems as, chiefly used, principally used, capable of being used, or any other such similarly expansive signal." *Id*.

The language of the scope clearly states that vertical shaft engines covered are "primarily for walk behind lawnmowers" but they may also be used for other non-hand-held outdoor power equipment. *Orders* at Appendix I. Commerce did not employ the use of terms like solely or only. Similarly, the ITC report indicates that horizontal shaft engines are "primarily used in generators and various construction equipment." *Petitioner's Scope Application* at Attachment 15; P.R. 8 (this attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12). This language is not exhaustive and does not suggest that all engines used in walk-behind law mowers are vertical shaft engines. Further, it does not limit the possibility that horizontal shaft engines can be or are used in walk-behind lawnmowers, even if it were an exemplary use. *See Final Scope Ruling*; P.R. 25; *see also Orders* at Appendix I; *King Supply Co., LLC v. United States*, 674 F.3d. at 1349;

*Petitioner's Scope Application* at Attachment 15; P.R. 8 (This attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12). Thus, the plain language of the scope does not support Commerce's finding that R210-S engine was covered by the orders simply because it is used in walk-behind mowers.

## III.     <u>CONCLUSION</u>

For the foregoing reasons the Court should find Commerce's *Final Scope Ruling* is not in accordance with law and unsupported by record evidence or the plain language of the scope of the *Orders*. The Court should therefore remand this action to Commerce with instructions for Commerce to: 1) issue a scope ruling based on the plain language of the scope and consistent with the Court's final opinion or; 2) reopen the record to consider additional information to interpret the scope of the *Orders*.

July 7, 2023                                        Respectfully submitted,

                                                         */s/ Brittney R. Powell*
                                                         Lizbeth R. Levinson
                                                         Brittney R. Powell

                                                         **FOX ROTHSCHILD LLP**
                                                         2020 K Street, NW
                                                         Suite 500
                                                         Washington, DC  20006
                                                         Tel: (202) 794-1186
                                                         Email: bpowell@foxrothschild.com
                                                         *Counsel for Zhejiang Amerisun Technology Co., Ltd.*

## <u>Word Count Certificate of Compliance</u>

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font). In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 3,677 words.  In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Brittney R. Powell*
Lizbeth R. Levinson
Brittney R. Powell

**FOX ROTHSCHILD LLP**
2020 K Street, NW
Suite 500
Washington, DC  20006
Tel:    202-794-1186
Fax:    202-461-3102