# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> BRIGGS & STRATTON, LLC, <br><br> Defendant-Intervenor. | Court No. 23-00011 |

## RESPONSE BRIEF OF DEFENDANT-INTERVENOR IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Stephen J. Orava
Daniel L. Schneiderman

**KING & SPALDING, LLP**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4706
(202) 626-2950

*Counsel to Defendant-Intervenor
Briggs & Stratton, LLC*

September 19, 2023

330907v9

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2 ................................................................1

BACKGROUND .........................................................................................................1

ARGUMENT ...............................................................................................................5

I.    STANDARD OF REVIEW ...............................................................................5

II.   COMMERCE'S SCOPE RULING IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS IN ACCORDANCE WITH LAW ..................................................................................................................6

CONCLUSION ..........................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United Steel & Fasteners, Inc. v. United States*,
    947 F.3d 794 (Fed. Cir. 2020)...................................................................................5

**Agency Determinations**

*Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof
    From the People's Republic of China: Antidumping and Countervailing Duty
    Orders*, 86 Fed. Reg. 23675, 23677 (May 4, 2021).............................................1, 3, 6

*Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts
    Thereof, from the People's Republic of China: Scope Ruling on Modified
    Vertical Shaft Engines* (December 22, 2022) .............................................1, 7, 10, 11

**Statutes and Regulations**

19 C.F.R. § 351.225(k) ...................................................................................................10

19 C.F.R. § 351.225(k)(1)..................................................................................................6

19 C.F.R. § 351.225(k)(1)(i)...............................................................................................6

19 C.F.R. § 351.225(k)(1)(i)(A) .......................................................................................11

19 C.F.R. § 351.225(k)(1)(ii)..............................................................................................6

19 U.S.C. § 1516a(b)(1)(B)(i)............................................................................................5

## STATEMENT PURSUANT TO RULE 56.2

Briggs & Stratton, LLC, petitioner in the underlying proceeding and Defendant-Intervenor in this litigation, hereby responds in opposition to the Motion for Judgment on the Agency Record and the Brief in Support thereof filed by Plaintiff Zhejiang Amerisun Technology Co., Ltd. ("Zhejiang Amerisun") on July 7, 2023 ("*Pl. Br.*").  Plaintiff contests certain aspects the final scope ruling issued by the U.S. Department of Commerce ("Commerce") regarding Certain Vertical Shaft Engines Between 99cc and Up To 225cc and Parts Thereof from the People's Republic of China.  *See Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof, from the People's Republic of China: Scope Ruling on Modified Vertical Shaft Engines* (December 22, 2022) ("*Scope Ruling*") (P.R. 25).

## BACKGROUND

In March 2020, Briggs & Stratton, LLC filed antidumping and countervailing duty petitions against imports from China of certain vertical shaft engines with displacements ranging from 99 to 225 cubic centimeters, which ultimately resulted in the imposition of antidumping and countervailing duty orders in May 2021.  *Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof From the People's Republic of China: Antidumping and*

*Countervailing Duty Orders*, 86 Fed. Reg. 23675, 23677 (May 4, 2021) (the "*Orders*"). The scope of the *Orders* provides as follows:

> The merchandise covered by these orders consists of spark-ignited, non-road, vertical shaft engines, whether finished or unfinished, whether assembled or unassembled, whether mounted or unmounted, primarily for walk-behind lawn mowers. Engines meeting this physical description may also be for other non-hand-held outdoor power equipment, including but not limited to, pressure washers. The subject engines are spark ignition, single-cylinder, air cooled, internal combustion engines with vertical power take off shafts with a minimum displacement of 99 cubic centimeters (cc) and a maximum displacement of up to, but not including, 225cc. Typically, engines with displacements of this size generate gross power of between 1.95 kilowatts (kw) to 4.75 kw.
>
> Engines covered by this scope normally must comply with and be certified under Environmental Protection Agency (EPA) air pollution controls title 40, chapter I, subchapter U, part 1054 of the Code of Federal Regulations standards for small non-road spark-ignition engines and equipment. Engines that otherwise meet the physical description of the scope but are not certified under 40 CFR part 1054 and are not certified under other parts of subchapter U of the EPA air pollution controls are not excluded from the scope of these proceedings. Engines that may be certified under both 40 CFR part 1054 as well as other parts of subchapter U remain subject to the scope of these proceedings.
>
> Certain small vertical shaft engines, whether or not mounted on non-hand-held outdoor power equipment, including but not limited to walk-behind lawn mowers and pressure washers, are included in the scope. However, if a subject engine is imported mounted on such equipment, only the engine is covered by the scope. Subject merchandise includes certain small vertical shaft engines produced in the subject country whether mounted on outdoor power equipment in the subject country or in a third country. Subject engines are covered whether or not they are accompanied by other parts.
>
> For purposes of these orders, an unfinished engine covers at a minimum a sub-assembly comprised of, but not

> limited to, the following components: Crankcase, crankshaft, camshaft, piston(s), and connecting rod(s). Importation of these components together, whether assembled or unassembled, and whether or not accompanied by additional components such as a sump, carburetor spacer, cylinder head(s), valve train, or valve cover(s), constitutes an unfinished engine for purposes of these orders. The inclusion of other products such as spark plugs fitted into the cylinder head or electrical devices (*e.g.*, ignition coils) for synchronizing with the engine to supply tension current does not remove the product from the scope. The inclusion of any other components not identified as comprising the unfinished engine subassembly in a third country does not remove the engine from the scope.
>
> Specifically excluded from the scope of these orders are "Commercial" or "Heavy Commercial" engines under 40 CFR 1054.107 and 40 CFR 1054.135 that have (1) a displacement of 160cc or greater, (2) a cast iron cylinder liner, (3) an automatic compression release, and (4) and a muffler with at least three chambers and volume greater than 400cc.
>
> The engines subject to these orders are predominantly classified in the Harmonized Tariff Schedule of the United States (HTSUS) at subheading 8407.90.1010. The engine subassemblies that are subject to these orders enter under HTSUS 8409.91.9990. The mounted engines that are subject to these orders enter under HTSUS 8433.11.0050, 8433.11.0060, and 8424.30.9000. Engines subject to these orders may also enter under HTSUS 8407.90.1020, 8407.90.9040, and 8407.90.9060. The HTSUS subheadings are provided for convenience and customs purposes only, and the written description of the orders is dispositive.

*Orders*, 86 Fed. Reg. at 23677-23678.

Less than a year after the *Orders* were imposed, petitioner began observing retailers sell lawn mowers exported from China by Plaintiff with a modified "R210-S" engine incorporating a novel and unprecedented design. Request for Scope Ruling (Aug. 8, 2022) ("*Scope Application*") at 17-29 (P.R. 1). In

3

particular, instead of employing a vertical crankshaft (which transmits power directly from the engine down to the blades), the R210-S has a horizontal crankshaft plus a gearbox redirecting power (from a horizontal to a vertical orientation) through an attached vertical drive shaft to the blades. *Id.* at 6-15. Petitioner suspected that this unwieldy design, which makes no sense from an engineering or commercial perspective, was developed solely as an attempt to evade the *Orders*, and on August 8, 2022, petitioner filed a scope ruling application requesting that Commerce find the engine to be covered by the *Orders*. *Id*. at 27-29 (P.R. 1).  Petitioner filed additional information in support of its application on October 11, 2022.  Petitioner's Response Comments (Oct. 11, 2022) (P.R. 21).

On December 22, 2022, Commerce found that the modified R210-S engine and similar designs, also referred to as "modified vertical shaft engines" ("MVSEs"), fall within the scope of the *Orders*.  *Scope Ruling* (P.R. 25).  In particular, Commerce found that, although MVSEs have a "horizontal crankshaft (*i.e.*, the shaft contained within the crankcase that is powered by the piston)," this feature does not exclude them from the scope. *Id*. at 7.  Commerce observed that "the portion of the engine defined in the scope as having a 'vertical' orientation is not the crankshaft but, rather, the power take off shaft." *Id*. at 7-8.  Commerce found that "the power take off shaft is the mechanism through which power is

4

transmitted from the engine to an attached implement (such as a blade), and it can be a secondary drive shaft (*i.e.*, a shaft connected via a gearbox (or transmission) to the crankshaft). Consequently, the downward shaft that connects a modified vertical shaft engine's right-angle gearbox to the blades of the lawn mower (and ultimately transmits power from the engine to the blades) is a vertical power take off shaft." *Id.* at 8. Because MVSEs have a "vertical" power take off shaft, Commerce concluded, they are covered by the scope of the *Orders*. *Id.*

## ARGUMENT

**I.   STANDARD OF REVIEW**

The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). In scope cases, the Court of Appeals has "consistently emphasized that Commerce is entitled to substantial deference when interpreting its own antidumping duty orders because the meaning and scope of such orders is within Commerce's particular expertise and special competence." *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 798 (Fed. Cir. 2020), quoting *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012). "As a result, parties challenging Commerce's scope determinations under substantial evidence review confront a high barrier to reversal." *Id.*

5

## II.  COMMERCE'S SCOPE RULING IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS IN ACCORDANCE WITH LAW

Plaintiff disputes Commerce's finding that MVSEs have a vertical power take off shaft.  According to Plaintiff, the scope term "power take off shaft" refers solely to the crankshaft, and Commerce erred in interpreting that term to include secondary drive shafts.  *Pl. Br.* at 6.  Plaintiff observes that the scope language itself does not "include a secondary drive shaft within the definition of a power take off shaft."  *Id.* at 7.  But this argument lacks merit.  In fact, the scope does not define the term "power take off shaft" at all, and Plaintiff makes no case that the term, on its face, unambiguously refers only to crankshafts.  The regulations provide that Commerce will examine certain primary and secondary interpretive sources when construing scope language.  19 C.F.R. § 351.225(k)(1).  That is exactly what it did here.  In construing the term "power take off shaft," Commerce appropriately relied upon primary interpretive sources, *i.e.*, the petition, *see* 19 C.F.R. § 351.225(k)(1)(i), as well as secondary interpretive sources, *i.e.*, information regarding industry usage and other relevant record evidence, *see* 19 C.F.R. § 351.225(k)(1)(ii).  *Scope Ruling* at 7-8 (P.R. 25).

Although the scope of the *Orders* is not restricted to engines designed for particular end uses, the covered engines are "primarily for walk-behind lawn mowers."  *Orders*, 86 Fed. Reg. at 23677.  *See also* Petition (March 18, 2020) at

6

pages 5 and 13 (P.R. 6).[1]  Commerce observed that "the Petition states that horizontal shaft engines are not suitable for walk-behind lawn mowers because the mower's blades must be connected to a vertical shaft to cut the grass beneath the mower." *Scope Ruling* at 8 (P.R. 25), citing the Petition at 14 (P.R. 6).  According to Commerce, "this supports our position that the orientation of the shaft that connects and transmits power from the engine to the blades is what determines whether an engine is 'vertical' or 'horizontal' in the context of the scope." *Id*.  In other words, the "vertical shaft" referenced in the petition is that which connects to the mower's blades.  This could be the crankshaft, but it does not necessarily have to be.  The Petition, therefore, supports Commerce's interpretation that a vertical drive shaft connecting to the mower blades, as in the MVSE at issue here, is a "vertical power take off shaft" for purposes of the scope.  *Id*.

Plaintiff does not take issue with Commerce's reliance upon the Petition as a primary interpretive tool.  Instead, Plaintiff takes issue with Commerce's citation to the *Scope Application*, which includes academic and encyclopedia articles describing crankshafts, drive shafts, and power take off ("PTO") designs.  *See Scope Application* at Attachments 16-17 (P.R. 10).  Plaintiff makes no argument that such articles are inappropriate secondary interpretive tools.  *Pl. Br*. at 6.

---

[1] The relevant Petition materials were included at Attachment 7 of the *Scope Application*.  (P.R. 5-6).

Rather, Plaintiff contends Commerce failed to explain how those articles support its finding at page 8 of the *Scope Ruling* that a "power take off shaft is the mechanism through which power is transmitted from the engine to an attached implement (such as a blade), and it can be a secondary drive shaft (*i.e.*, a shaft connected via a gearbox (or transmission) to the crankshaft)." *Id*.  Plaintiff argues that the articles "are not specific to engines used for lawnmowers," and they do not "support the proposition that crankshafts and power take off shafts are exclusive to one another, such that a crankshaft could not also be the power take off shaft for the engine." *Id*.

    Plaintiff misunderstands the record.  The articles at issue were provided to demonstrate the common industry understanding of the relevant engine components.  The fact that the articles are not specific to lawnmower engines is irrelevant, because terms such as "crankshaft" have a common meaning in any engine design.  *See Scope Application* at Attachment 16a (P.R. 10).  The common understanding of "power take-off" is simply a method of taking power from one source and transmitting it to an attached implement.  *See id*. at Attachment 16b (P.R. 10).  The referenced articles do not claim that a crankshaft cannot act as the power take off shaft, and Commerce made no such finding.  Indeed, in every lawnmower engine known to petitioner (apart from MVSEs), there is only one shaft: the crankshaft *is* the vertical power take off shaft.  The referenced articles do

8

show, however, that a power take off shaft *can be* a secondary drive shaft, such as that employed in MVSEs. *See id*. at Attachments 16-17 (P.R. 10). In this respect, the articles support Commerce's determination that the MVSE's vertical drive shaft can be considered a "power take off" shaft for purposes of the scope.

      Plaintiff argues that, in order for the MVSE's power to be transmitted to the blades, it must originate from the horizontal crankshaft, and so *that* should be considered a PTO shaft. *Pl. Br.* at 7. Obviously, given the MVSE's design, power has to be transmitted through both the horizontal crankshaft *and* the vertical drive shaft. The point remains, however, that power must at some point be transmitted in the vertical direction in order to reach the mower blades below the engine. Whether both the crankshaft and the drive shaft are considered PTO shafts, or whether only the secondary drive shaft should be considered the PTO shaft is irrelevant. Either way, the design involves a vertical shaft transmitting power to the blades, and thus it includes a "vertical power take off shaft" bringing the engine in-scope. The fact that the engine also includes a horizontal shaft is irrelevant, because there is no specific scope exclusion for engines having horizontal crankshafts.

      Alternatively, Plaintiff contends that the MVSE actually has only one shaft, *i.e.*, the crankshaft, and that the gearbox and attached vertical drive shaft should be

9

considered parts of the lawnmower rather than as parts of the engine itself. *Pl. Br.* at 7-8. Commerce, however, found otherwise. As Commerce explained:

> We disagree with Zhejiang Amerisun that the right-angle gearbox and vertical power take off shaft should be considered parts of the lawn mower, rather than parts of the engine. Photographic evidence on the record illustrates how the right-angle gearbox and vertical power take off shaft are integrated into the modified vertical shaft engine to make a single engine unit. Furthermore, we find that the scope merely enumerates the minimum components that must be included for a machine to be considered an engine, rather than providing an exhaustive list. Thus, there is nothing in the language of the scope that precludes a gearbox connected to a shaft from being considered an integrated part of an engine.

*Scope Ruling* at 8 (P.R. 25). *See also Scope Application* at 7-12 (P.R. 1) (containing the referenced photographic evidence). In its brief, Plaintiff offers only a conclusory assertion that the gearbox and drive shaft are not part of the engine. *Pl. Br.* at 8. Plaintiff points to no record evidence contradicting Commerce's finding, and it does not explain how Commerce's finding is unsupported by substantial evidence. *Id*. Accordingly, Plaintiff has not demonstrated entitlement to a remand under the applicable standard of review.

Finally, Plaintiff argues that Commerce improperly considered as part of its analysis the intended end-use of MVSEs as lawnmower engines. *Pl. Br.* at 9-10. According to Plaintiff, the regulations allow Commerce to consider end-use as part of a (k)(2) analysis, but "only when the (k)(1) sources fail to clarify the scope of the order." *Pl. Br.* at 9-10. *See also* 19 C.F.R. § 351.225(k). As explained above, however, Commerce did not examine end-use as part of a (k)(2) analysis; rather, it

10

looked to the petition as a primary interpretive tool under a (k)(1) analysis. *See Scope Ruling* at 8-9 (P.R. 25). In order to understand the meaning of the terms "vertical shaft" and "vertical power take off shafts" as they appear in the scope, the discussion in the petition regarding the need to transmit power in a downward direction from the lawnmower engine to the blades is relevant. *See id*. The regulations specifically permit Commerce to consider the petition for precisely this purpose. 19 C.F.R. § 351.225(k)(1)(i)(A). Contrary to Plaintiff's assertion, Commerce did not find that engines must be considered "vertical shaft" engines simply by virtue of their intended use in lawnmowers.

## CONCLUSION

For the reasons set forth above, the Court should affirm the *Scope Ruling*.

Respectfully submitted,

*/s/ Daniel L. Schneiderman*
Stephen Orava
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
(202) 737-0500

*Counsel for Defendant-Intervenor*

September 19, 2023

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with applicable word count limitations.  Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes <u>2,691</u> words.  In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

<u>*/s/ Daniel L. Schneiderman*</u>
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW,
Washington, DC 20006
(202) 737-0500

*Counsel for Defendant-Intervenor*

September 19, 2023