**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Court No. 23-00011 ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| BRIGGS & STRATTON, LLC, | ) ) |
| Defendant-Intervenor. | ) ) ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL:

JONZACHARY FORBES
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

September 19, 2023

KYLE S. BECKRICH
Trial Attorney
U.S. Dept. of Justice
Civil Division/National Courts
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT PURSUANT TO RULE 56.2 ........................................................................ 2

      I.     Administrative Determination Under Review ........................................................ 2

      II.    Issue Presented For Review .................................................................................. 2

STATEMENT OF FACTS ............................................................................................... 2

SUMMARY OF ARGUMENT ......................................................................................... 4

ARGUMENT ............................................................................................................... 4

      I.     Standard Of Review ............................................................................................ 4

      II.    Commerce's Determination That The Orders Cover Modified Vertical Shaft
            Engines Is Supported By Substantial Evidence And In Accordance With Law ..... 6

            A.    The Scope Language Encompasses Modified Vertical Shaft Engines ........ 6

            B.    Although Unnecessary To Commerce's Determination, The Primary
                 Interpretative Sources Support Commerce's Analysis ............................ 11

CONCLUSION ........................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Am. Silicon Techs. v. United States*,
   261 F.3d 1371 (Fed. Cir. 2001) ............................................................................................5

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938).............................................................................................................5

*Consolo v. Fed. Maritime Comm'n*,
   383 U.S. 607 (1996).............................................................................................................10

*Crawfish Processors Alliance v. United States*,
   483 F.3d 1358 (Fed. Cir. 2007) ............................................................................................5

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ..............................................................................................5

*Global Commodity Grp. LLC v. United States*,
   709 F.3d 1134 (Fed. Cir. 2013) ............................................................................................6

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)........................................................................5

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992).............................................................................................................5

*King Supply Co. v. United States*,
   674 F.3d 1343 (Fed. Cir. 2012) ............................................................................................5

*Mid Continent Nail Corp. v. United States*,
   725 F.3d 1295 (Fed. Cir. 2013) ............................................................................................6

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) ............................................................................................10

*Nucor Corp. v. United States*,
   612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009)........................................................................5

*Sandvik Steel Co. v. United States*,
   164 F.3d 596 (Fed. Cir. 1998) ..............................................................................................5

*Sango Int'l L.P. v. United States*,
   484 F.3d 1371 (Fed. Cir. 2007) ............................................................................................5

*Walgreen Co. of Deerfield v. United States*,
   620 F.3d 1350 (Fed. Cir. 2010) ............................................................................................6

**Regulations**

19 C.F.R. § 351.225 ................................................................................................................passim

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES

|  |  |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD, ) ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-00011 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| BRIGGS & STRATTON, LLC, ) | |
| ) | |
| Defendant-Intervenor. ) | |
| ) | |

## <u>ORDER</u>

Upon consideration of the motion for judgment upon the agency record, responses thereto, reply, and all other papers, it is hereby

ORDERED that the motion is denied, and it is further

ORDERED that judgment shall enter in favor of the United States.


Dated: _____, 2023          _____
          New York, NY                                    JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD, | ) )  ) |
| Plaintiff, | ) ) |
| v. | )      Court No. 23-00011 ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| BRIGGS & STRATTON, LLC, | ) ) |
| Defendant-Intervenor. | ) ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the motion of plaintiff, Zhejiang Amerisun Technology Co., Ltd (Zhejiang Amerisun), for judgment upon the agency record. As demonstrated below, the determination of the Department of Commerce is supported by substantial evidence and is otherwise in accordance with law. Accordingly, we respectfully request that the Court deny Zhejiang Amerisun's Rule 56.2 motion for judgment upon the agency record and sustain Commerce's determination.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

**I.**     <u>**Administrative Determination Under Review**</u>

Zhejiang Amerisun challenges the final scope ruling issued on December 22, 2022,

concerning the antidumping duty (AD) and countervailing duty (CVD) orders on certain vertical

shaft engines between 99cc and up to 225cc and parts thereof from the People's Republic of

China (China).  *See Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts*

*Thereof, from the People's Republic of China: Scope Ruling on Modified Vertical Shaft Engines*

(Dec. 22, 2022) (Final Scope Ruling) (P.R. 25).  In the Final Scope Ruling, Commerce found

that modified vertical shaft engines, such as the modified R210-S engine manufactured by

Chongqing Rato Technology Co., Ltd (Chongqing Rato), are covered by the scope of the AD and

CVD orders.

**II.**    <u>**Issue Presented For Review**</u>

Whether Commerce's scope ruling that modified vertical shaft engines are within the

scope of the orders is supported by substantial evidence and otherwise in accordance with law.

<u>**STATEMENT OF FACTS**</u>

On August 8, 2022, domestic petitioner and defendant-intervenor, Briggs & Stratton,

LLC (Briggs & Stratton), filed a scope ruling application requesting that Commerce determine

that modified vertical shaft engines are covered by the scope of the orders.  *See* Briggs &

Stratton Letter, "Request for Scope Ruling Regarding Certain Modified Vertical Shaft Engines"

(Aug. 8, 2022) (P.R. 1-10, C.R 1-10) (Scope Ruling Application).  On August 26, 2022,

Commerce initiated a scope inquiry based on Briggs & Stratton's application.

The relevant language of the scope states: "The merchandise covered by the orders

consists of spark-ignited, non-road, vertical shaft engines, whether finished or unfinished,

whether assembled or unassembled, whether mounter or unmounted, primarily for walk-behind lawn mowers. . . .  The subject engines are spark ignition, single-cylinder, air cooled, internal combustion engines with vertical power take off shafts with a minimum displacement of 99 cubic centimeters (cc) and a maximum displacement of up to, but not including 225cc."  Final Scope Ruling at 2.

The specific description of the product subject to the inquiry is a single-cylinder, air-cooled, non-road, internal combustion engine used to power lawn mowers, with a horizontal crankshaft connected to a right-angle gearbox.  The gearbox of the engine redirects power from the crankshaft to a vertical power take off shaft that powers the blades of the lawn mower.  *See* Final Scope Ruling at 3.  Images of the example product can be found in the scope ruling application, including in figure 1 of the application showing the right-angle gearbox as a part of the R210-S engine that redirects power through a vertical shaft that transmits power to the blades and figure 6 showing the inner mechanism without the cover.  *See* Scope Ruling Application at 7, 11.

Through the course of the inquiry, Zhejiang Amerisun submitted rebuttal factual information and comments arguing that the scope of the orders does not cover modified vertical shaft engines.  Namely, Zhejiang Amerisun argued that because modified vertical shaft engines, like R210-S engine, have a horizontal crankshaft, they cannot fall within the scope of the orders that require "vertical power take off shafts."  *See* Final Scope Ruling at 6.

In its Final Scope Ruling on December 22, 2022, Commerce determined that modified vertical shaft engines, such as the modified vertical shaft engine manufactured by Chongqing Rato identified by Briggs & Stratton, are covered by the scope of the orders pursuant to 19 C.F.R. § 351.225(k)(1).

3

## SUMMARY OF THE ARGUMENT

Commerce reasonably determined that modified engines with a gearbox and vertical power take off shaft are covered by the scope of the orders. The vertical power take off shaft transmits the power from the engine to the mower blades and therefore properly is considered a power take off shaft in line with the language of the scope. Zhejiang Amerisun argues that Commerce erred in finding the vertical shaft to be a power take off shaft that is part of the engine. However, Zhejiang Amerisun's mere disagreement with Commerce's conclusion falls well short of demonstrating that Commerce's determination was unreasonable. Even if it were possible to draw two inconsistent conclusions from the evidence in the record, Commerce's findings are still supported by substantial evidence. The record shows that a power take off shaft is a mechanism through which power is transmitted from the engine to an attached implement (the blades of a lawnmower). Because the vertical shaft in the modified vertical shaft engine transmits power from the engine to the blades, Commerce reasonably determined that the engine fell within the scope of the orders. Commerce also properly considered evidence from primary interpretive sources in its scope analysis under 19 § C.F.R. 351.225(k)(1)(i) contrary to Zhejiang Amerisun's contentions. Therefore, Commerce's determination is supported by substantial evidence and in accordance with law.

## ARGUMENT

### I.    Standard Of Review

The Court may review a determination by Commerce as to "whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). Such a "class or kind" determination is known as a "scope ruling." 19 C.F.R. § 351.225. This Court

"must uphold a scope ruling unless {it finds the ruling} to be 'unsupported by substantial evidence on the record or otherwise not in accordance with law.'" *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

A scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), making it "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998). When Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as in this case, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

"Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted) (second alteration in original). The Court grants "'significant deference to Commerce's interpretation of a scope order,' so long

as Commerce's interpretation is not 'contrary to the order's terms,' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (citing *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).  After all, the interpretation of its own orders is "at the very heart of {Commerce's} expertise." *Walgreen Co. of Deerfield v. United States*, 620 F.3d 1350, 1355 (Fed. Cir. 2010).

## II.   Commerce's Determination That The Orders Cover Modified Vertical Shaft Engines Is Supported By Substantial Evidence And In Accordance With Law

### A.   The Scope Language Encompasses Modified Vertical Shaft Engines

Commerce's determination that the scope of the orders covers modified vertical shaft engines, such as Chongqing Rato's R210-S engine, is supported by substantial evidence and otherwise in accordance with law.  Specifically, Commerce found that the language of the scope is dispositive after evaluation of the scope ruling application and the submissions and arguments by Zhejiang Amerisun, and further that primary interpretative sources support its determination. *See* Final Scope Ruling at 8-9.

Pursuant to 19 C.F.R. § 351.225(k)(1), Commerce "will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive."  Further, the regulation provides that Commerce may consider certain primary interpretative sources when conducting its analysis under paragraph (k)(1), including "the descriptions of the merchandise contained in the petition" and "the descriptions of the merchandise contained in the initial investigation."  19 C.F.R. § 351.225(k)(1)(i).

As stated above, the relevant language of the scope states: "The merchandise covered by the orders consists of spark-ignited, non-road, vertical shaft engines, whether finished or unfinished, whether assembled or unassembled, whether mounter or unmounted, primarily for

walk-behind lawn mowers. . . .  The subject engines are spark ignition, single-cylinder, air cooled, internal combustion engines with vertical power take off shafts with a minimum displacement of 99 cubic centimeters (cc) and a maximum displacement of up to, but not including 225cc." Final Scope Ruling at 2.  Record evidence establishes, and the parties do not dispute, that the modified vertical shaft engines are spark-ignited, single-cylinder, air-cooled, internal combustion engines between 99cc and 225cc.  *Id.* at 7.  Thus, the only question is whether the modified vertical shaft engines have a horizontal or vertical power take off shaft.  *Id.*

The power take off shaft is a mechanism through which power is transmitted from the engine to an attached implement (here, the blades of the lawnmower), and it can be a secondary drive shaft, *i.e.*, a shaft connected via a gearbox to the crankshaft.  *Id.* at 8 (citing Scope Ruling Application at 24).  Consequently, Commerce reasonably determined that the vertical shaft that connects a modified vertical shaft engine's right-angle gearbox to the blades of the lawn mower and through which power is transmitted from the engine to the blades is a vertical shaft engine within the meaning of the scope.  *Id.*  Commerce further found that primary interpretive sources support this determination.  *Id.* at 8-9.  In particular, Commerce considered language from the petition and the ITC Final Injury Report.  *Id.*

Zhejiang Amerisun argues that Commerce erred in finding the vertical shaft component of the engine to be the power take off shaft and that instead, it is the horizontal crankshaft that is the power take off shaft for purposes of the scope.  *See* Zhejiang Amerisun Br. at 5-6.  First, Zhejiang Amerisun challenges the reliability of sources demonstrating that the power take off shaft can also be a separate drive shaft from the crankshaft and argues that Commerce did not explain how the sources establish that conclusion.  *Id.* at 6-7.  However, Commerce cited the scope ruling application to support its conclusion, which in turn includes multiple articles as well

as a university publication as evidence.  *See* Final Scope Ruling; *see also* Scope Ruling

Application at 24, Attachments 16b, 16c, and 17 (P.R. 9).  For example, the record includes

statements that certain power take off devices "use a drive shaft and bolted joint to transmit

power to a secondary implement or accessory."  *See* Scope Ruling Application at Attachment

16b.  Likewise, the record demonstrates that a power take off shaft "transfer[s] power between

farm tractors and implements."  *Id.* at Attachment 17.  Therefore, it was reasonable for

Commerce to conclude that a power take off shaft can be a vertical drive shaft like the one at

issue here when that vertical drive shaft is the means of transmitting power to the implements

(the blades).  Notably, although Zhejiang Amerisun argues that Commerce erred in relying on

certain evidence, Zhejiang Amerisun does not point to any other record evidence that would

support an alternative conclusion.  *See* Zhejiang Amerisun Br. at 6-7.

Zhejiang Amerisun also argues that a crankshaft could be a power take off shaft.  *Id.* at 6.

Commerce does not dispute this.  Instead, Commerce's decision is premised on the fact that a

power take off shaft need not be a crankshaft where there is a separate mechanism that transmits

power from the engine *to the attached implement*.  *See* Final Scope Ruling at 8.  Zhejiang

Amerisun agrees with Commerce that the power take off shaft is the mechanism through which

power is transmitted from the engine to an attached implement.  *See* Zhejiang Amerisun Br. at 7.

But Zhejiang Amerisun fails to explain how the horizontal crankshaft, without the vertical shaft,

transmits any power to the blades.  Indeed, the mechanism that ultimately transmits power to the

attached blades is the vertical shaft and not the horizontal shaft.  If the horizontal crankshaft were

the power take off shaft, the lawn mower blades would be upright, such as in a tiller machine,

and not flat to the ground.  *See* Scope Ruling Application at 18.  In other words, the vertical shaft

acting as the power take off shaft is the mechanism that transmits power from the engine to the blades so that they operate as lawnmower blades.

Zhejiang Amerisun further argues that Commerce erred in finding that the vertical power take off shaft connected via a right angle gearbox is a component of the engine for purposes of the scope and not part of the lawnmower. Zhejiang Amerisun Br. at 7-9. In particular, Zhejiang Amerisun claims that the horizontal shaft is the only shaft directly connected to the engine and thus the only shaft *able to transmit the generated power*. *Id.* at 8. This is plainly incorrect. The vertical shaft is the mechanism that ultimately transmits power to the lawnmower blades even if such power originates in the horizontal shaft. Final Scope Ruling at 8. Zhejiang Amerisun seems to concede this point later by stating "this {vertical} power transmission system is used exclusively to transmit the power . . . to turn the mowing blade." Zhejiang Amersiun Br. at 8. Again, Commerce did not dispute that power originates in the horizontal shaft, but it is the vertical shaft that transmits power to the blades, which is a defining characteristic of a power take off shaft. *See id.* at 7 ("Zhejiang Amerisun agrees with Commerce that the power take off shaft is the mechanism through which power is transmitted from the engine to an attached implement.").

Zhejiang Amerisun next argues that the gearbox and vertical shaft are not part of the engine because they "are attached to the lawnmower." *Id*. at 7-8. This argument fails for two reasons. First, the entire engine unit is attached to the lawnmower. *See* Scope Ruling Application at 7, Figure 1. Zhejiang Amerisun does not cite any evidence that supports drawing an arbitrary line of "attachment" between the horizontal and vertical elements of the engine. Second, Commerce reasonably found that photographic evidence provided by Briggs & Stratton in its application demonstrates that the right-angle gearbox and vertical power shaft are

integrated into the modified vertical shaft engine to make a single engine unit. Final Scope Ruling at 8 (citing Scope Ruling Application at 8-13). Of note, that photographic evidence includes a diagram in which the gearbox is attached to the engine. Scope Ruling Application at 8, Figure 2. The photographs likewise show how the horizontal crankshaft transmits power to the vertical shaft, which transmits power to the blades. *Id.* at 11, Figure 6.

Zhejiang Amerisun also contends that the gearbox and vertical shaft are not part of the engine because if the horizontal shaft were removed no power would be transmitted to them. Zhejiang Amerisun Br. at 8-9. This argument is self-defeating. The same logic could be applied to the gearbox and vertical shaft. If the gearbox and vertical shaft were removed, no power would be transmitted to the lawnmower blade. Zhejiang Amerisun's argument only establishes that the engine includes *both* the horizontal crankshaft and the vertical shaft, and that removing part of the engine would cause it to malfunction. The argument does not establish a definitive definition of what constitutes an engine such that Commerce's determination was unreasonable.

Because the vertical shaft is part of the engine and transmits power to the attached implements, the vertical shaft is the power take off shaft and Commerce's scope determination should be sustained. But even if this Court were to find that Zhejiang Amerisun's arguments had merit, Commerce provided a reasoned explanation based on record information as to why the gearbox and vertical shaft of the modified vertical shaft engine should properly be considered a vertical power take off shaft within the meaning of the scope. Namely, Commerce reasoned that the vertical shaft is the mechanism that ultimately transmits power to the lawnmower blade. Final Scope Ruling at 8. Therefore, even if it were possible to draw two inconsistent conclusions from the evidence contained in the record, Commerce's findings are still by substantial evidence. *See Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1996); *Nippon Steel Corp. v. United*

*States,* 458 F.3d 1345, 1352 (Fed. Cir. 2006).  Here, Zhejiang Amerisun's arguments demonstrate that it disagrees with Commerce's findings, but fail to demonstrate that Commerce's determination was unreasonable.

At bottom, the scope language provides that subject merchandise, among other requirements not at issue in this case, have "vertical power take off shafts."  Because the parties agree that a vertical power take off shaft is the shaft that transmits power from the engine to the attached elements, and because the R210-S engine has a vertical shaft that transmits power to the blades, Commerce properly determined that the scope of the orders covers modified vertical shaft engines.  Accordingly, Commerce's analysis under 19 C.F.R. § 351.225(k)(1) should be sustained.

## B.     Although Unnecessary To Commerce's Determination, The Primary Interpretive Sources Support Commerce's Analysis

Zhejiang Amerisun argues that as a matter of law, Commerce impermissibly relied on evidence of "end use" found in primary interpretive sources.  *See* Zhejiang Amerisun Br. at 9-11. As a threshold matter, Commerce explicitly found the language of the scope itself to be dispositive and that its conclusion was only further supported by primary interpretive sources from the time of underlying investigation, *i.e.* the original petition and the International Trade Commission's (ITC) Final Report.  Final Scope Ruling at 8-9.  Therefore, even if the Court were to agree with Zhejiang Amerisun that Commerce should not have relied on primary interpretative sources, it does not disturb Commerce's ultimate finding reached under 19 C.F.R. § 351.225(k)(1).

In any event, Zhejiang Amerisun misinterprets Commerce's citation to these primary interpretive sources as some type of "end-use" analysis.  Commerce did not make a broad finding that all engines used in walk behind mowers are subject to the orders with no need for

further inquiry as Zhejiang Amerisun suggests.  Rather, Commerce highlighted language from the primary interpretive sources showing that the mechanical nature of modified vertical shaft engines is in accordance with in-scope merchandise.  Commerce looked at language from the petition noting that horizontal shaft engines are not suitable for walk-behind lawn mowers because the mower's blades must be connected to a vertical shaft to cut the grass beneath the mower.  Final Scope Ruling at 8.  This supports Commerce's reasonable conclusion that the modified vertical shaft is the power take off shaft since the device transmits power to the blades so that it can properly function on a horizontal plane and not as an upright windmill.  Further, the language from the ITC report noting that horizontal shaft engines have different markets reinforces the fact that the nature of this product, using a vertical power take off shaft to transmit power to mower blades, is in line with in-scope merchandise.  *Id.*  As noted by the ITC, horizontal shaft engines "are primarily used in generators and various construction equipment." *Id.*  Vertical shaft engines, on the other hand, "are primarily used in walk-behind lawn mowers." *Id.*  Because the scope language includes vertical shaft engines "primarily for walk behind lawn mowers," Final Scope Ruling at 2, the ITC report supports Commerce's determination that a modified vertical shaft engine, like the R210-S engine, is in scope merchandise.

Commerce properly considered this evidence in its analysis as provided by 19 C.F.R. § 351.225(k)(1)(i).  Zhejiang Amerisun does not advance any contrary evidence from primary interpretive sources that it contends that Commerce should have instead considered. Accordingly, Zhejiang Amerisun's attempt to muster up a legal error ignores the record and is misplaced.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Zhejiang Amerisun's Rule

56.2 motion for judgment on the agency record and sustain the challenged determination in its

entirety.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Claudia Burke
CLAUDIA BURKE
Deputy Director

JONZACHARY FORBES                       /s/Kyle S. Beckrich
U.S. Department of Commerce             KYLE S. BECKRICH
Office of Chief Counsel for             Trial Attorney
Trade Enforcement and Compliance        Commercial Litigation Branch
1401 Constitution Avenue, NW.           Civil Division
Washington, DC 20230-0001               U.S. Department of Justice
Telephone: (240) 449-5906               P.O. Box 480
Facsimile: (202) 482-8184               Ben Franklin Station
Email: JonZachary.Forbes@trade.gov      Washington, DC 20044
                                        Telephone: (202) 616-0463
                                        Email: Kyle.Beckrich@usdoj.gov

                                        *Attorneys for Defendant*

September 19, 2023

13

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the

Court's scheduling order in that it contains 3,511 words, including text, footnotes, and headings.


/s/Kyle S. Beckrich
Kyle S. Beckrich