# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: The Honorable Judge Jennifer Choe-Groves**

| | |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD.,<br><br>        Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>BRIGGS & STRATTON, LLC<br><br>        Defendant-Intervenor. | Court No. 23-00011 |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Lizbeth R. Levinson
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Tel: (202) 794-1186
Email: bpowell@foxrothschild.com

*Counsel for Zhejiang Amerisun Technology Co., Ltd.*

October 24, 2023

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

SUMMARY OF THE ARGUMENT ............................................................................... 1

I.   THE DEFENDANT MISCHARACTERIZES THE STANDARD OF REVIEW ... 2

II.  COMMERCE'S DETERMINATION THAT THE R210-S HORIZONTAL SHAFT ENGINE IS WITHIN THE SCOPE OF THE ORDERS REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE ........................................... 3

   A. THE SCOPE LANGUAGE CLEARLY EXCLUDES HORIZONTAL SHAFT ENGINES LIKE THE R210-S ENGINE ................................................................... 3

   B. THE PRIMARY INTERPRETIVE SOURCES DO NOT SUPPORT COMMERCE'S ANALYSIS ................................................................................... 7

CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ... 3

28 U.S.C. § 1581(c) ... 2

## FEDERAL CASES

*CS Wind Vietnam Co., Ltd. v. United States*,
  832 F. 3d 1367 (Fed. Cir. 2016) ... 11

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,*
  222 F. Supp. 3d 1255 (Ct. Int'l Trade 2017) (citing *CS Wind Vietnam*) ... 11

*King Supply Co., LLC v. United States,*
  674 F.3d. 1343, 1347-1348 ... 8, 9

*Vandewater International Inc. v. United States,*
  476 F. Supp. 3d 1357, 1359 (Ct. Int'l Trade 2020) ... 3

## ADMINISTRATIVE DETERMINATIONS

*Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof from the People's Republic of China*,
  86 Fed. Reg. 23675 ... 2

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: The Honorable Judge Jennifer Choe-Groves

| | |
|---|---|
| ZHEJIANG AMERISUN TECHNOLOGY CO., LTD.,<br><br>                Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>                Defendant,<br><br>and<br><br>BRIGGS & STRATTON, LLC<br><br>                Defendant-Intervenor. | Court No. 23-00011 |

## PLAINTIFF'S REPLY BRIEF

Plaintiff Zhejiang Amerisun Technology Co., Ltd. ("Zhejiang Amerisun") respectfully submits this reply brief to respond to the Defendant United States' Opposition to Plaintiff's Rule 56.2 Motion for Judgment upon the agency record (ECF 26). This reply brief is timely in accordance with the Court's Order dated October 18, 2023.

## SUMMARY OF THE ARGUMENT

Chongqing Rato Technology Co., Ltd.'s ("Chongqing Rato") R210-S engine attached to Zhejiang Amerisun's lawnmowers is properly classified as a horizontal shaft engine. The Defendant attempts to misdirect the Court by mischaracterizing the plain language of the scope, the administrative record, the design of Zhejiang Amerisun's lawnmowers, and even Zhejiang Amerisun's Rule 56.2 Motion for Judgment upon the agency record. Ultimately, the Defendant's

position is untenable since it was unreasonable to find that a horizontal shaft engine is included within the scope of *Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 23675 ("*Orders*") when the *Orders* cover certain *vertical* shaft engines.  The record clearly shows that the power take-off shaft for the R210-S engine is the horizontal crank shaft (hereafter the horizontal power take-off shaft).

The vertical transmission shaft that the Defendant erroneously upholds as the power take-off shaft is not a part of the engine, does not receive power directly from the engine, and does not directly move the blades.  Rather, it is a component of the gearbox, a separate mechanism attached to the lawnmower that serves as an intermediary part of the lawnmower's power transmission system.  Even the primary interpretive sources, photographs, and articles used by the Department of Commerce ("Commerce") to reach its decision do not support its *Final Scope Ruling*.  *See Certain Vertical Shaft Engines Between 99cc and Up To 225cc, and Parts Thereof, from the People's Republic of China: Scope Ruling on Modified Vertical Shaft Engines* (Dec. 22, 2022) ("*Final Scope Ruling*"); Public Record ("P.R.") 25.  Commerce fails to justify its decision that the presence of a secondary gearbox or secondary drive shaft allows for the vertical transmission shaft to replace the horizontal power take-off shaft as the power take-off shaft for the R210-S engine.  Therefore, we urge the Court to find that the *Final Scope Ruling* is not in accordance with law and is unsupported by record evidence or the plain language of the scope of the Orders.

I. **The Defendant Mischaracterizes the Standard of Review.**

In its arguments before the Court, the Defendant mischaracterizes not only what Zhejiang Amerisun is requesting from this judicial review, but the standard of review itself.  This Court reviews final scope rulings issued by Commerce pursuant to 28 U.S.C. § 1581(c) to determine

2

whether they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Despite the Defendant's contentions, the Court has consistently found that substantial evidence is "best understood as a word formula connoting reasonableness review," and that when addressing a substantial evidence issue, the Court must analyze whether the "challenged agency action 'was reasonable given the circumstances presented by the whole record." *Vandewater International Inc. v. United States*, 476 F. Supp. 3d 1357, 1359 (Ct. Int'l Trade 2020).

The Defendant focuses its discussion concerning the standard of review on the amount of deference Commerce is owed. *See* Defendant's Br. at 4-6. It essentially argues that the Court cannot substitute its judgment for that of the agency's where the choice is between "two fairly conflicting views." *Id.* at 5. But this argument for deference ignores that the Court *can* choose a conflicting view and substitute its judgment for the agency's where the agency's judgment was *unreasonable*. *See Vandewater International Inc.*, 476 F. Supp. 3d 1359. Here, Commerce's judgment was unreasonable in finding that a horizontal shaft engine fell within the plain language of the scope that explicitly covers certain *vertical* shaft engines.

**II.     Commerce's Determination that the R210-S Horizontal Shaft Engine is Within the Scope of the Orders Remains Unsupported by Substantial Evidence.**

**A. The Scope Language Clearly Excludes Horizontal Shaft Engines like the R210-S Engine**

The R210-S engine used in Zhejiang Amerisun's lawnmowers is not a modified vertical shaft engine, but a horizontal shaft engine with a horizontal crankshaft that serves as its power take-off shaft. The critical fact that the Defendant continues to ignore within the plain language of the scope is that subject engines have a "vertical power take off shaft," and that the power take-off shaft is "the mechanism through which *power is transmitted from the engine* to an

attached implement." *See Orders; see also Final Scope Ruling* at 8; P.R. 25.  Defendant contends wrongly that a transmission shaft included in the gearbox of the R210-S engine is the power take-off shaft, but that is a blatant mischaracterization of the engine's operations.  *See* Defendant's Br. at 14; *see also Final Scope Ruling* at 8-9.

There is no doubt that horizontal shaft engines, which use horizontally oriented power take-off shafts, were intended to be outside the scope of the Orders.  *See Petitioner's Scope Application* at Attachment 15; P.R. 8 (This attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12); *see also Orders*.  In the R210-S engine, the power take-off shaft is horizontal.  *See* Letter from Commerce & Finance Law Offices to the Sec'y of Commerce, *Certain Vertical Shaft Engines Between 99cc and 225cc, and Parts Thereof from China: Comments on Scope Ruling Application Regarding Certain Modified Vertical Shaft Engines* (*"Comments"*) (Sept. 26, 2022); P.R. 19.  The power from the engine "takes off" through the horizontal crankshaft/power take-off shaft, that uses the power to move the vertical transmission shaft inside the gearbox that then moves the horizontal transmission belt that turns the blades of the lawnmower.  *See id.*; *see also Petitioner's Scope Application* at 8-12; P.R. 1 (This attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12).  The entire premise of the Defendant's argument is that the vertical transmission shaft is the power take-off shaft because it transmits the power generated by the engine to the attached implement in the blades. Defendant's Br. at 8.  But even if the power take-off shaft were appropriately defined as the mechanism that moves the attached implement, the vertical transmission shaft in Zhejiang Amerisun's lawnmower simply does not transmit the power generated by the engine to the attached implement.

When viewing the model image of the R210-S engine and Zhejiang Amerisun's lawnmower, it is clear that there are two horizontal components: a horizontal take-off shaft that transmits the power generated by and from the engine and a horizontal transmission belt which moves the blade. *See* Comments at Attachment 1. There is only one vertical component, a transmission shaft that neither receives power directly from the engine nor directly transfers it to the attached implement. *See id.*; *see also Petitioner's Scope Application* at 8-12. The vertical transmission shaft is merely an intermediary part in the flow of power. *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12. The horizontal power take-off shaft and the horizontal transmission belt are the mechanisms which transmit the power generated by and from the engine to move the blades. *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12. Instead of reasonably concluding that the R210-S engine is a horizontal shaft engine by virtue of the horizontal power take-off shaft, the Defendant essentially "created" the modified vertical shaft engine category and found that the separate mechanisms of the gearbox and the engine constituted an integrated engine within the scope of the *Orders*. *Final Scope Ruling* at 8-9. Commerce's finding is unreasonable in that it would support a faulty conclusion that so long as any power transmission system involved a vertical shaft, even where that shaft could not be accurately described as a power take-off shaft or is significantly removed from the engine and the blades, the product still would be considered a vertical shaft engine. Therefore, the only reasonable classification of this engine is as a horizontal shaft engine that is outside the scope of the Orders, since ultimately power is transferred from the engine to an attached implement through horizontal mechanisms.

The Defendant asserts that the horizontal take-off shaft could not transfer power to the attached implement without the vertical transmission shaft. *See* Defendant's Br. at 8. Yet this

5

observation ignores that, but for the horizontal take-off shaft, the vertical transmission shaft could not transfer power to the blade since it has no direct connection to the engine.  *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12.   Indeed, the vertical transmission shaft cannot even move the blades alone, but additionally requires a horizontal transmission belt.  *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12.  It is truly unreasonable for the Defendant to assert that a component that is neither attached to the engines nor the blades, but is instead a part of a separate gearbox, somehow operates as the power take-off shaft that transmits the power from that engine to those blades.  This position is even more unreasonable where the horizontal power take-off shaft is a direct part of the engine and is ultimately what transmits the generated power *from the engine* to the remaining parts of the lawnmower.  *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12.

      Defendant wrongly states that Zhejiang Amerisun conceded that the "{vertical} power transmission system is used exclusively to transmit the power … to turn the mowing blade." Defendant's Br. at 9.  That observation blatantly removes Zhejiang Amerisun's critical point from that sentence, which stated the vertical transmission shaft is used to transmit the power *from the horizontal take-off shaft*.  *See* Zhejiang Amerisun's Br. at 8.  To further this misdirection, the Defendant also claims that if the horizontal power take-off shaft was actually the power take-off shaft, the blades would be upright.  Defendant's Br. at 8.  This argument presumes that the power take-off shaft must be directly attached to the implement.  Yet nowhere in the scope of the *Orders* does it state that the power take-off shaft must be directly connected to the implement, nor does the record show that horizontal shaft engines can only be used with upright implements.  *See Orders* at Appendix I.

6

Critically, Zhejiang Amerisun has consistently argued that the vertical transmission shaft is a part of the gearbox, a component of the lawnmower, rather than a part of the R210-S engine. *See* Zhejiang Amerisun's Br. at 8; *see also Comments* at 3-4. The Defendant would have the Court believe that the gearbox and its vertical transmission shaft are integrated with the R210-S engine horizontal shaft engine, and thus create a single modified engine unit. *See* Defendant's Br. at 10. But schematics and photographs included in the Petitioner's Scope Ruling Application clearly draw a line between the engine and the gearbox that contains the vertical transmission shaft. *See Petitioner's Scope Application* at 8-12. Figure 6 of the Scope Ruling Application shows that the gearbox is not an inherent part of the engine but is instead connected to the engine from its position on the lawnmower. *Id*. at 11. Further, images, including the photograph in Figure 7 and the schematic in Figure 2, confirm that the assembly of the gearbox is separate from the engine, and that the gearbox can be removed while the engine remains. *Id*. at 8, 12. These figures show that the gearbox and the engine are separately connected to the lawnmower, and that the gearbox is not an integrated part of the engine, but a separate part of the *lawnmower's* power transmission system. *See id*. at 8-12. There is no evidence provided in the record that the horizontal power take-off shaft is not a part of the engine or that it can be separated from the engine like the gearbox with its vertical transmission shaft. All images of Zhejiang Amerisun's lawnmower show that the horizontal power take-off shaft is always part of the engine. *See id*. This confirms that the R210-S engine is not a so-called modified vertical shaft engine, but a horizontal shaft engine excluded from the scope of the *Orders*.

B. The Primary Interpretive Sources do not Support Commerce's Analysis

Commerce's citation to the primary interpretive sources and administrative record concerning the end uses of the engine does not support the conclusion that the R210-S engine is

7

a modified vertical engine. *See Final Scope Ruling* at 8-9. Commerce specifically noted that the Petition and the ITC report indicated that horizontal shaft engines had different uses and were not typically used in walk-behind lawnmowers. *Id*. The Defendant claims that it did not "make a broad finding that all engines used in walk behind mowers are subject to the orders with no need for further inquiry." Defendant's Br. at 11-12. But it essentially found that it is impossible for a walk behind lawnmower to use a horizontal shaft engine, and that this fact supported its interpretation of the scope language. *See Final Scope Ruling* at 8-9. It is disingenuous for the Defendant to now claim that there was no end-use analysis present in the *Final Scope Ruling*. The end use of the engine was one of the foundations supporting Commerce's interpretation of the scope. Importantly, the Court has found that the phrase "are used" alone does not "compel a reading of an exclusive end-use, and it does not render a reading of an exemplary use unreasonable or outside the scope." *King Supply Co., LLC v. United States*, 674 F.3d. 1343, 1347-1348. Zhejiang Amerisun maintains that the language of the scope of the *Orders* does not compel a reading of an exclusive end-use, as Commerce's analysis suggests. *Orders* at Appendix I. There is nothing in the plain language of the scope that denies the possibility of a horizontal shaft engine being used in a walk-behind lawnmower.

        The Defendant persists in claiming that the primary interpretive sources, primarily the language from the ITC Final Injury Report, supports the reasonableness of its decision. *See* Defendant's Br. at 7. However, the ITC Final Injury Report definitively excludes from the scope horizontal shaft engines, with "nor does the scope include engines with a horizontal shaft." *Petitioner's Scope Application* at Attachment 15; P.R. 8 (This attachment consists of the relevant portion of the USITC Report, Pub. 5185 at I-12). As discussed above, the ITC Report did note that horizontal shaft engines are primarily used in generators and various construction

equipment, but it did not deny the possibility that such an engine could be used in a lawnmower. *See id*.; *see also King Supply Co., LLC,* 674 F.3d. at 1349.  As the record shows, the R210-S engine is a horizontal shaft engine that is used in lawnmowers.  Therefore, even the Defendant's reliance on this language falls short, since any reasonable interpretation of the ITC Final Injury Report would recognize that a horizontal shaft engine such as the R210-S is explicitly outside the scope of the Report and of the *Orders*.

Similarly, Commerce claims that the articles included in the scope ruling application show that a vertical drive shaft, like the vertical transmission shaft in Zhejiang Amerisun's lawnmowers, can be the power take-off shaft.  *See* Defendant's Br. at 8.  Yet, the Defendant never shows how these articles support that the gearbox is a part of the engine or how its inclusion somehow supplants the horizontal crankshaft, which transmits power generated by and from the engine, as the power take-off shaft in the R210-S engine.  Instead, the Defendant focuses on the discussion in the articles that a power take-off shaft transmits power to an attached implement.  *Id*. at 8-9.  But even this contention ignores the fact that the vertical transmission shaft in Zhejiang Amerisun's lawnmowers does not transmit power to an attached implement but is instead an intermediary that transfers the power it receives from the horizontal power take-off shaft to the horizontal transmission belt that moves the blades.  *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12.  Therefore, the vertical transmission shaft in the gearbox attached to R210-S engine does not, and indeed could not, operate as the engine's power take off shaft.

Commerce first cites to a Wikipedia article stating that certain power take-off devices use a drive shaft and bolted joint to transmit the power to a secondary implement.  *Petitioner's Scope Application* at Attachment 16b; P.R. 10; *see also* Defendant's Br. at 8.  However, this

9

article does not support that the vertical transmission shaft in Zhejiang Amerisun's lawnmower is the power take-off shaft, rather than the horizontal crankshaft. Instead, the article's description of a power take-off device more accurately describes the R210-S engine's horizontal take-off shaft, since it is the shaft that transmits the power generated by the engine to the lawnmower. *Petitioner's Scope Application* at Attachment 16b; P.R. 10

The Defendant's citation to a university publication also fails to support its position. *Petitioner's Scope Application* at Attachment 17; P.R. 10; *see also* Defendant's Br. at 8. This article states that a stub shaft is often called the power take-off device and that it transfers the power from tractors to the attached implement. *Petitioner's Scope Application* at Attachment 17. Notably, this discussion seems difficult to apply to engines like the R210-S, since it principally discusses power take-off devices in the much larger engines used in tractors. *Id.* But even if this article applies here, the R210-S engine employs a horizontal crankshaft that transfers the generated power from the engine to the attached gearbox. *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12.

Even if the Court considers the blades to be the attached implement, and not the entirety of the lawnmower that includes the gearbox, the vertical transmission shaft does not even transfer power to the attached implement. *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12. The vertical transmission shaft instead transfers the power it receives from the horizontal power take-off shaft to the horizontal transmission belt which then moves the blades. *See Comments* at Attachment 1; *see also Petitioner's Scope Application* at 8-12. In contrast, Zhejiang Amerisun provided Commerce with an example of a vertical shaft engine of comparable size to the R210-S engine in its *Comments on the Scope Ruling Application. See Comments* at Attachment 1. In that engine, the vertical power take-off shaft does not act as an

intermediary part of a power transmission system but is directly connected to both the engine and the blades. *Id*. There is no horizontal crankshaft nor is there a horizontal transmission belt. *Id*. The engine provides power that moves the vertical power take-shaft, and the vertical shaft uses that power to spin the blades. *Id*. This vertical shaft engine's typical design is truly incomparable to the R210-S engine and demonstrates that the vertical transmission shaft in Zhejiang Amerisun's lawnmower's gearbox does not operate like or resemble a power take-off shaft in a vertical shaft engine. *Id*. Thus, these articles fail to support the Defendant's decision that the power take-off shaft for the R210-S engine is the "secondary drive shaft, *i.e.*, a shaft connected via a gearbox (or transmission) to the crankshaft," since the vertical transmission shaft does not meet the definition of a power take-off shaft. *CS Wind Vietnam Co., Ltd. v. United States,* 832 F. 3d 1367 (Fed. Cir. 2016) (Commerce has an obligation to supply adequate explanations for its determinations, and "must reasonably tie its determination to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." *Id*. at 1376); *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 222 F. Supp. 3d 1255 (Ct. Int'l Trade 2017) (citing *CS Wind Vietnam*).

      Commerce's citation to these sources fails to show how the vertical transmission shaft in Zhejiang Amerisun's lawnmowers could operate as a power take-off shaft, since it is not directly transmitting the power generated by the engine, nor is it directly transferring that power to the attached implement. Its only role is to act as an intermediary mechanism for the power to flow through. Accordingly, Commerce's reliance on and mischaracterization of primary interpretive sources in its Final Scope Ruling fails to demonstrate or explain how the vertical transmission

shaft supplants the horizontal power take-off shaft as *the* power take-off shaft for the R210-S engine used in Zhejiang Amerisun's lawnmowers and was ultimately unreasonable.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court find Commerce's *Final Scope Ruling* is not in accordance with law and is unsupported by record evidence or the plain language of the scope of the *Orders*. Therefore, we request that the Court remand this action to Commerce with instructions for Commerce to: 1) issue a scope ruling based on the plain language of the scope and consistent with the Court's final opinion or; 2) reopen the record to consider additional information to interpret the scope of the *Orders.*

Respectfully submitted,

October 24, 2023

*/s/ Brittney R. Powell*
Lizbeth R. Levinson
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Tel: (202) 794-1186
Email: bpowell@foxrothschild.com
*Counsel for Zhejiang Amerisun Technology Co., Ltd.*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 3,560 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ *Brittney R. Powell*

Lizbeth R. Levinson
Brittney R. Powell

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Tel:    202-794-1183
 Fax:   202-461-3102

October 24, 2023