A-570-124, C-570-125<br>
Remand<br>
Slip Op. 24-20<br>
**Public Document**<br>
E&C/OIX:  EE

*Zhejiang Amerisun Technology Co., Ltd. v. United States*,<br>
**Court No. 23-00011, Slip Op. 24-20 (CIT February 20, 2024)**<br>
**Certain Vertical Shaft Engines Between 99cc and up to 225cc and Parts Thereof from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION<br>
PURSUANT TO COURT REMAND**

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) issued in *Zhejiang Amerisun*.[1]  This action arises out of Commerce's December 22, 2022 final scope ruling in which we determined that modified vertical shaft engines, such as the R210-S engine manufactured by Chongqing Rato Technology Co., Ltd. (Chongqing Rato), are covered by the scope of the antidumping duty and countervailing duty orders on certain vertical shaft engines between 99cc and up to 225cc and parts thereof (small vertical engines) from the People's Republic of China (China).[2]

On February 20, 2024, the Court remanded to Commerce its final scope ruling as unsupported by substantial evidence and not in accordance with law.[3]  Specifically, the Court held that:  (1) because the scope does not specify that a right-angle gearbox connected to the horizontal crankshaft may be part of the engine, Commerce's finding that the scope does not

---

[1] *See Zhejiang Amerisun Technology Co., Ltd. v. United States*, Court No. 23-00011, Slip Op. 24-20 (CIT February 20, 2024) (*Zhejiang Amerisun*).
[2] *See* Memorandum, "Scope Ruling on Modified Vertical Shaft Engines," dated December 22, 2022 (Final Scope Ruling); *see also Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof from the People's Republic of China:  Antidumping and Countervailing Duty Orders*, 86 FR 23675 (May 4, 2021) (*Orders*).
[3] *See Zhejiang Amerisun*, Slip Op. 24-20 at 27.

contain an exhaustive list of components that may comprise an engine is unsupported by substantial evidence and not in accordance with law; (2) the Wikipedia articles submitted by Briggs & Stratton Corporation (the petitioner) on which Commerce relied to support its factual conclusions were unreliable and irrelevant; and (3) an academic article submitted by the petitioner on which Commerce also relied to support its factual conclusions was irrelevant because it did not specifically address walk-behind lawn mowers or discuss secondary drive shafts.[4]  Accordingly, in these final results of redetermination, consistent with the Court's remand order, Commerce finds that certain engines, such as the modified R210-S engine manufactured by Chongqing Rato, are not covered by the scope of the *Orders* under 19 CFR 351.225(k)(1).

## II.     SCOPE OF THE *ORDERS*

The merchandise covered by the *Orders* consists of spark-ignited, non-road, vertical shaft engines, whether finished or unfinished, whether assembled or unassembled, whether mounted or unmounted, primarily for walk-behind lawn mowers.  Engines meeting this physical description may also be for other non-hand-held outdoor power equipment, including but not limited to, pressure washers.  The subject engines are spark ignition, single-cylinder, air cooled, internal combustion engines with vertical power take off shafts with a minimum displacement of 99 cubic centimeters (cc) and a maximum displacement of up to, but not including, 225cc.  Typically, engines with displacements of this size generate gross power of between 1.95 kilowatts (kw) to 4.75 kw.

Engines covered by the *Orders* normally must comply with and be certified under Environmental Protection Agency (EPA) air pollution controls title 40, chapter I, subchapter U,

---

[4] *Id.* at 16 and 22-23.

part 1054 of the Code of Federal Regulations standards for small non-road spark-ignition engines and equipment. Engines that otherwise meet the physical description of the scope but are not certified under 40 CFR part 1054 and are not certified under other parts of subchapter U of the EPA air pollution controls are not excluded from the scope of the *Orders*. Engines that may be certified under both 40 CFR part 1054 as well as other parts of subchapter U remain subject to the scope of the *Orders*.

Certain small vertical shaft engines, whether or not mounted on non-hand-held outdoor power equipment, including but not limited to walk-behind lawn mowers and pressure washers, are included in the scope. However, if a subject engine is imported mounted on such equipment, only the engine is covered by the scope. Subject merchandise includes certain small vertical shaft engines produced in the subject country whether mounted on outdoor power equipment in the subject country or in a third country. Subject engines are covered whether or not they are accompanied by other parts.

For purposes of the *Orders*, an unfinished engine covers at a minimum a sub-assembly comprised of, but not limited to, the following components: crankcase, crankshaft, camshaft, piston(s), and connecting rod(s). Importation of these components together, whether assembled or unassembled, and whether or not accompanied by additional components such as a sump, carburetor spacer, cylinder head(s), valve train, or valve cover(s), constitutes an unfinished engine for purposes of the *Orders*. The inclusion of other products such as spark plugs fitted into the cylinder head or electrical devices (*e.g.*, ignition coils) for synchronizing with the engine to supply tension current does not remove the product from the scope. The inclusion of any other components not identified as comprising the unfinished engine subassembly in a third country does not remove the engine from the scope.

Specifically excluded from the scope of the *Orders* are "Commercial" or "Heavy Commercial" engines under 40 CFR 1054.107 and 40 CFR 1054.135 that have (1) a displacement of 160 cc or greater, (2) a cast iron cylinder liner, (3) an automatic compression release, and (4) a muffler with at least three chambers and volume greater than 400cc.

The engines subject to the *Orders* are predominantly classified under the Harmonized Tariff Schedule of the United States (HTSUS) subheading 8407.90.1010. The engine subassemblies that are subject to the *Orders* enter under HTSUS subheading 8409.91.9990. The mounted engines that are subject to the *Orders* enter under HTSUS subheadings 8433.11.0050, 8433.11.0060, and 8424.30.9000. Engines subject to the *Orders* may also enter under HTSUS subheadings 8407.90.1020, 8407.90.9040, and 8407.90.9060. The HTSUS subheadings are provided for convenience and customs purposes only, and the written description of the merchandise is dispositive.

## III. DESCRIPTION OF MERCHANDISE SUBJECT TO THE FINAL SCOPE RULING

The merchandise subject to the Final Scope Ruling is a modified vertical shaft engine, such as the modified R210-S engine manufactured by Chongqing Rato. A modified vertical shaft engine is a single-cylinder, air-cooled, spark-ignited, non-road, internal combustion engine used to power lawn mowers, with a horizontal crankshaft connected to a right-angle gearbox. The gearbox of the engine redirects power from the crankshaft to a vertical power take off shaft that powers the blades of the lawn mower.

## IV. BACKGROUND

Commerce issued the Final Scope Ruling on December 22, 2022, finding that certain engines such as Chongqing Rato's R-210s engine (which Commerce referred to as a modified vertical shaft engine in the Final Scope Ruling) were covered by the scope of the *Orders*

because: (1) Commerce found that, while the engine has a horizontal crankshaft, it has a "vertical" power take off shaft; (2) nothing in the language of the scope precluded a gearbox connected to a shaft from being considered an integrated part of an engine; and (3) primary interpretive sources also supported Commerce's interpretation that the engine has a "vertical" orientation through its vertical power take off shaft.[5] In *Zhejiang Amerisun*, the Court remanded the Final Scope Ruling, where Commerce found modified vertical shaft engines, such as Chongqing Rato's R-210s engine, were covered by the scope of the *Orders*, as unsupported by substantial evidence and not in accordance with law.[6]

## V.    ANALYSIS

As noted above, the Court held that Commerce's interpretation of the language of the scope of the *Orders* was unsupported by substantial evidence and not in accordance with law and also dismissed as irrelevant and/or unreliable the evidence provided by the petitioner on which Commerce relied in the Final Scope Ruling in reaching the finding that modified vertical shaft engines, such as Chongqing Rato's R-210S engine, are covered by the scope of the *Orders*. Commerce respectfully disagrees with the Court that: (1) the language of the scope must specify that a gearbox connected to a shaft is part of an engine in order for Commerce to find that such a configuration is an integrated part of a vertical shaft engine; and (2) Commerce may not rely on academic publications that speak to engine structure (such as the article from Penn State University on which Commerce relied in the Final Scope Ruling), even if such sources are not specific to lawn mowers, especially given that the products covered by the *Orders* are not limited to lawn mower engines. Nonetheless, in compliance with the Court's remand order in *Zhejiang*

---

[5] *See* Final Scope Ruling at 8-9.
[6] *See Zhejiang Amerisun*, Slip Op. 24-20 at 27.

5

*Amerisun*, we determine that certain engines, such as Chongqing Rato's R-210s engine, are not covered by the scope of the *Orders*.

## VI. INTERESTED PARTY COMMENTS

On March 27, 2024, Commerce released the Draft Results of Redetermination to all interested parties and invited parties to comment.[7] On April 4, 2024, Zhejiang Amerisun Technology Co., Ltd. (Zhejiang Amerisun) submitted comments agreeing with the Draft Results of Redetermination.[8] However, Zhejiang Amerisun in its comments disagreed with Commerce's characterization of Chongqing Rato's R-210s engine as a modified vertical shaft engine, rather than a horizontal shaft engine.[9] No other interested party submitted comments.

Because Commerce referred to Chongqing Rato's R-210s engine as a modified vertical shaft engine in the Final Scope Ruling, Commerce does not consider it appropriate to change its characterization of the product at issue when referencing its findings in that document. However, for purposes of these final results of redetermination, Commerce refers to the product at issue as certain engines such as Chongqing Rato's R-210s engine.

## VII. FINAL RESULTS OF REDETERMINATION

In compliance with the Court's remand order in *Zhejiang Amerisun*, we continue to determine that certain engines, such as Chongqing Rato's R-210s engine at issue in Commerce's December 22, 2022 final scope ruling, are not covered by the scope of the *Orders*. Should the Court affirm these final results of redetermination, we will publish a notice in the *Federal*

---

[7] *See* Draft Results of Redetermination Pursuant to Court Remand, *Zhejiang Amerisun Technology Co., Ltd. v. United States*, Consol. Court No. 23-00011, Slip Op. 24-20 (CIT February 20, 2024), dated March 27, 2024 (Draft Results of Redetermination).
[8] *See* Zhejiang Amerisun's Letter, "Comments on Draft Results of Redetermination," dated April 4, 2024 (Draft Remand Comments). These comments were timely filed on April 3, 2024, before the 5:00 p.m. deadline established in the Draft Results of Redetermination, but subsequently rejected by ACCESS due to a technical filing error. *See* Draft Remand Comments at Attachment 1.
[9] *Id.*

*Register* stating that, consistent with the Court's holdings, certain engines, such as Chongqing Rato's R-210s engine, are outside the scope of the *Orders*. Further, at that time, we will also issue relevant instructions, as appropriate, to U.S. Customs and Border Protection giving effect to the determination, as sustained by the Court.

4/10/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance